UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-103-KSF

BILLY E. BERTRAM                                                                    PLAINTIFF

vs.                                    **OPINION AND ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                   DEFENDANT

* * * * * * * *

This matter is before the Court on Plaintiff's Motion for Summary Judgment to reverse the decision of the Commissioner that was partially unfavorable to Plaintiff [DE 8] and Defendant's Motion for Summary Judgment to affirm that decision [DE 9].   Having been fully briefed, these motions are ripe for review.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Billy Eugene Bertram is presently forty-nine years old and completed the eighth grade in special education classes [TR 41, 69].  He cannot read and is able to write only a little [TR 17].  He worked off and on as a carpenter's helper and at logging from 1987 until October 1, 1999 [TR 46, 65, 215-217].  He did not recall any specific injury to his knee or leg, but testified in 2006 that he just wore it out working in the woods [TR 217].  He tried to do logging work after that date but testified he could not get around [TR 219].  He is not good with dates [TR 211, 216, 222, 223] and only knows the date he quit working because his wife kept records [TR 219].  He delayed filing for benefits until 2004 because "I didn't know it was really that bad though, last couple years.  I mean, it's been bad.  I could get around little bit then."  [TR 223].

Mr. Bertram's medical history includes the following.  While he was still working, he had his knee x-rayed, with negative results [TR 120, 220].  On January 5, 2000, Mr. Bertram was operated

on for a chain-saw injury to his left foot [TR 132-136].   On April 24, 2003, he reported to the Salyersville Medical Center with an umbilical hernia caused by lifting nine days earlier [TR 120]. He also complained he had right knee pain on and off for two years and noted swelling on occasion [*id.*].   He claimed he could not stand or walk for prolonged periods because of the stiffness [*id.*]. The knee was mildly warm with no tenderness and mildly swollen [TR 122].   Dr. Cuevas diagnosed this as monoarticular arthritis of the knee [*id.* at 122].   On April 29, 2003, Bertram reported to his surgeon that he "was doing some heavy lifting at work ... moving some lawnmowers and fence posts" and felt a pop, resulting in the hernia [TR 131].   On May 22, 2003, he returned to Dr. Cuevas for a follow up and complained of knee pain and swelling [TR 117-119].   Pain medication was prescribed [*id.*].   On June 5, 2003, he had surgery to repair the umbilical hernia [TR 124-129].   On a follow-up visit, the surgeon noted:  "Patient does lift heavy stuff.  I told him to return back to heavy stuff three weeks after surgery, start out slowly and increase as tolerated."  [TR 130]

On January 15, 2004, Mr. Bertram saw Dr. Mamlouk for right knee swelling that he reported sometimes goes down but is getting bigger.  He was referred for an MRI [TR 141].   On February 2, 2004, Dr. Mamlouk saw him for a follow up and noted swelling and tenderness right above the right knee [TR 139].   On February 9, 2004, Dr. Sakow reported from the MRI that there were "large horizontal degenerative cleavage tears of both the medial and lateral menisci ... extending from the anterior horn to the posterior horn measuring 4 cm in length." [TR 137].

On March 31, 2004, Mr. Bertram was examined by Courtney Spear, a Clinical Psychologist, to whom he reported that he "has not worked since the summer of 2003 when he had surgery on his foot."  [TR 144].   Included among her diagnostic impressions are that Bertram has a learning disorder of written expression and mild mental retardation [TR 145-146].   On a Wechsler Adult Intelligence Scale – Third Edition, plaintiff achieved a verbal IQ of 70, a performance IQ of 64, and a full scale IQ of 65 [TR 144].   She noted he has always worked at heavy labor positions, but his "current walking/pain difficulties would make such positions impossible at present and ... training

2

for other positions would be ineffective." [TR 146]. Dr. Wright conducted a consulting physical examination of Bertram in June 2004 [TR 164-168]. He noted the right knee was markedly enlarged and there were bony abnormalities of the knee, edema, soft tissue effusion and diminished range of motion [TR 165]. In his opinion, Mr. Bertram "appeared incapable of performing even a mild amount of ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects" [TR 166].

During the hearing before the ALJ on February 22, 2006, Mr. Bertram said the swelling in his leg had been going up and down, but it was really swollen the last two years [TR 201]. He has been using crutches the last two years [TR 201, 208]. He was referred to an orthopedic surgeon a few years ago, but he did not have the money for the treatment [TR 202-203, 210]. Mr. Bertram testified he was not good with dates [TR 211, 216, 223]. He was advised that he must prove he was disabled on or prior to December 2002 in order to receive disability income benefits [TR 217]. There was no particular incident that caused him to quit work; he just got to the point he could not [TR 219].

Mr. Bertram filed applications for a period of disability, disability insurance benefits and Supplemental Security Income in January 2004 [TR 41-44]. That application was denied with a determination that Bertram's conditions did not prevent him from doing less demanding work prior to December 31, 2002, the date his insured status for disability insurance benefits expired [TR 31-32, 37]. He appealed and was heard before an administrative law judge ("ALJ") [TR 198-233]. The ALJ determined that Bertram was totally disabled since April 1, 2003, but not before that time. Accordingly, the ALJ determined he was entitled only to SSI payments [TR 18, 45].

The Commissioner argues that Bertram failed to establish he had impairments that met or were medically equal to Section 12.05C of the Listing of Impairments prior to December 31, 2002 [DE 9]. He further claims the ALJ's determination is supported by substantial evidence in the record. Finally, he argues that plaintiff's claim he could not afford to visit a doctor rings hollow in

light of his expenditures for a case of beer a week, whiskey and 2-3 packs of cigarettes per day during the period of his claimed disability. *Id.* at 13 (citing *Silas v. Secretary of Health and Human Services*, 861 F.2d 475, 480 (6th Cir. 1988); TR 118, 121, 143.

## II.     ANALYSIS

### A.     Standard of Review

"Disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Commissioner of Social Security,* 502 F.3d 532, 539 (6th Cir. 2007); 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant has a compensable disability under the Social Security Act, the Commissioner must follow a five-step "sequential evaluation process." 20 C.F.R. § 404.1520(a)-(e); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). Those five steps were summarized in *Walters* as follows:

1.     If the claimant is doing substantial gainful activity, he is not disabled.

2.     If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found disabled.

3.     If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.

5.      Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Id.* "[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five." *Id.*

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and whether the proper legal standards were followed. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* "Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *Her v. Commissioner of Social Security*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.    Whether Plaintiff Met His Burden To Prove an Onset of Disability Prior to December 31, 2002**

Bertram does not question the ALJ's favorable determination of total disability; however, he disagrees with the onset date of April 1, 2003, which denies him disability insurance benefits. He argues that "[i]t seems as if [the ALJ] pulled this date out of the air." [DE 8, p. 11]. He also complains that the ALJ did not contact his counsel "to discuss or obtain an amended onset date." *Id.* He further argues that the disability stemmed from mild mental retardation, which pre-existed even Bertram's claimed onset date of 1999. *Id.*, pp. 11-12. Finally, he claims there was testimony that he "developed his physical disabilities to his leg and back in 1999 in a work-related logging accident."

The ALJ found that Bertram has the following severe impairments:  mild mental retardation and gouty arthritis [TR 16].  For plaintiff to show that his combined impairments met the requirements of a Section 12.05C listed impairment for mental retardation prior to December 31, 2002, he must have proven that he had a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related

5

limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.05C. The evidence supports Bertram's argument that his mild mental retardation, with a low score of 64, pre-existed December 31, 2002. However, he failed to prove the second requirement that he had "a physical or other mental impairment imposing an *additional* and significant work-related limitation of function" prior to that date. *Id.*, emphasis added.

The record evidence was that Bertram's knee was x-rayed while he was working, and the results were negative. Bertram said more than once that there was no specific injury or trauma to his knee [TR 141, 217, 219]. He never sought treatment for his knee from the time he claimed he quit working in October 1999 until April 2003, when he sought treatment for a recent umbilical hernia after "doing some heavy lifting at work." [TR 120, 131]. At that time, he said he had knee pain "off and on" for two years and swelling "on occasion." [TR 120]. Dr. Cuevas noted that the knee was mildly warm and swollen with no tenderness [TR 122]. On a return visit on June 17, 2003, he reported he was doing well and was told to "return back to heavy stuff three weeks after surgery." [TR 130]. Plaintiff's next complaint was in January 2004 when Dr. Mamlouk found "a large mass on the distal femoral area," but he had full range of motion [TR 141]. In February 2004, there was worsening in the swelling and tenderness, but still full range of motion [TR 139]. By June 2004, the knee was markedly enlarged with bony abnormalities, edema, soft tissue effusion and diminished range of motion [TR 165].

In *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146 (6th Cir. 1986), the claimant had WAIS scores of 70, 67 and 67, although there was evidence that he deliberately attempted to lower his score. *Id.* at 149. He failed to meet the requirements of Section 12.05C, however, because "he had no significant, additional physical or mental impairment as required by the listing." *Id.* at 151. While he complained of other impairments, the medical evidence did not support his claims. The court said:

6

> While an ALJ may not ignore a claimant's subjective complaints of physical pain, those subjective symptoms cannot serve as the basis for a finding of disability where, as here, they are not supported by medical signs or findings that would reasonably indicate a medical cause for such symptoms.

*Id.* at 150. *See also Abbott v. Sullivan*, 905 F.2d 918 (6th Cir. 1990) (claimant had a markedly unstable knee that required the wearing of a brace, in addition to his mental deficiency).

In the present case, there is no medical evidence that Bertram suffered a work-related limitation of function prior to April 2003. Bertram never sought treatment for his knee until that time. He did not recall any specific injury to his knee when he quit work in 1999. An x-ray was negative. In April 2003, he reported his knee pain had been "off and on" and that it swelled "on occasion" in the past two years. It was only "mildly swollen" at that time. In May 2003, he was complaining about the pain and swelling, and the records reflect that his condition worsened thereafter. In February 2006, Bertram testified that his knee had been really swollen "the last two years" and that it was going up and down before that [TR 201].

During the first four steps of the sequential evaluation process, "the claimant has the burden of proof." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). Bertram failed to meet his burden of showing that his significant additional physical impairment predated April 2003. He was even cautioned by the ALJ during the hearing that this was his burden [TR 217]. The Commissioner's determination is supported by substantial evidence in the record. Even if another conclusion could be supported by the evidence, the ALJ's decision "must stand if the evidence could reasonably support the conclusion reached." *Her v. Commissioner*, 203 F.3d at 390. Accordingly, the ALJ'S decision should be affirmed.

III.   **CONCLUSION**

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS**:

A.      Plaintiff's Motion for Summary Judgment [DE 8] is **DENIED**;

7

B.      Defendant's Motion for Summary Judgment [DE 9] is **GRANTED**;

C.      Judgment consistent with this opinion shall be entered contemporaneously; and

D.      **THIS ACTION IS DISMISSED AND SHALL BE STRICKEN FROM THE ACTIVE DOCKET**.

This April 21, 2008.

**Signed By:**

_**Karl S. Forester**_   K S F

**United States Senior Judge**